MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X

MARIA GUAMAN, *individually and on*
*behalf of others similarly situated,*

|   |   |
|---|---|
| Plaintiff, | **COMPLAINT** |
| -against- | **COLLECTIVE ACTION UNDER** |
| | **29 U.S.C. § 216(b)** |
| CO-CO NAILS BREWSTER, INC.  (D/B/A | |
| COCO NAIL & SPA), KEVIN LEE A.K.A. OI | **ECF Case** |
| SOOK LEE, and SHIN KIM A.K.A. CHUI, | |
| Defendants. | |

-----------------------------------------------------X

Plaintiff Maria Guaman ("Plaintiff Guaman" or "Ms. Guaman"), individually and on behalf of others similarly situated, by and through her attorneys, Michael Faillace & Associates, P.C., upon her knowledge and belief, and as against Co-Co Nails Brewster, Inc. (d/b/a Coco Nail & Spa), ("Defendant Corporation"), Kevin Lee a.k.a. Oi Sook Lee and Shin Kim a.k.a. Chui, ("Individual Defendants"), (collectively, "Defendants"), alleges as follows:

**NATURE OF ACTION**

1.      Plaintiff Guaman is a former employee of Defendants Co-Co Nails Brewster, Inc. (d/b/a Coco Nail & Spa), Kevin Lee a.k.a. Oi Sook Lee, and Shin Kim a.k.a. Chui.

2.       Defendants own, operate, or control a spa and a nail salon, located at 111 F, Independent Way, Brewster, NY 10509 under the name "Coco Nail & Spa".

3.      Upon information and belief, individual Defendants Kevin Lee a.k.a. Oi Sook Lee and Shin Kim a.k.a. Chui, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the salon as a joint or unified enterprise.

4.      Plaintiff Guaman was employed as a masseuse and a cleaner at the salon located at 111 F, Independent Way, Brewster, NY 10509.

5.      Plaintiff Guaman was ostensibly employed as a masseuse. However, she was required to spend a considerable part of her workday performing non-tipped duties, including but not limited to cleaning bathrooms, tables, chairs and corners, handwashing and folding towels, sweeping, and mopping, taking out the garbage and cleaning the entire salon (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiff Guaman worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that she worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, and failed to pay Plaintiff Guaman appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Defendants employed and accounted for Plaintiff Guaman as a tipped worker in their payroll, but in actuality her duties required a significant amount of time spent performing the non-tipped duties alleged above.

9.      Regardless, at all relevant times, Defendants paid Plaintiff Guaman at a rate that was lower than the required tip-credit rate.

10.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Guaman's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Guaman's actual duties in payroll records by designating her as a delivery worker instead of as a non-tipped employee. This allowed Defendants to avoid paying Plaintiff Guaman at the minimum wage rate and enabled them to pay her at the tip-credit rate (which they still failed to do).

12.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff Guaman's and other tipped employees' tips.

13.     Defendants' conduct extended beyond Plaintiff Guaman to all other similarly situated employees.

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Guaman and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiff Guaman now brings this action on behalf of herself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiff Guaman seeks certification of this action as a collective action on behalf of herself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiff Guaman's state law claims under 28 U.S.C. § 1367(a).

18.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a spa and a nail salon located in this district. Further, Plaintiff Guaman was employed by Defendants in this district.

## PARTIES

*Plaintiff*

19.     Plaintiff Maria Guaman ("Plaintiff Guaman" or "Ms. Guaman") is an adult individual residing in Kings County, New York.

20.     Plaintiff Guaman was employed by Defendants at Coco Nail & Spa from approximately March 2016 until on or about October 28, 2020.

21.     Plaintiff Guaman consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

22.     At all relevant times, Defendants owned, operated, or controlled a spa and a nail salon, located at 111 F, Independent Way, Brewster, NY 10509 under the name "Coco Nail & Spa".

23.     Upon information and belief, Co-Co Nails Brewster, Inc. (d/b/a Coco Nail & Spa) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 111 F, Independent Way, Brewster, NY 10509.

24.     Defendant Kevin Lee a.k.a. Oi Sook Lee is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Kevin Lee a.k.a. Oi Sook Lee is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Kevin Lee a.k.a. Oi Sook Lee possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiff Guaman, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

25.     Defendant Shin Kim a.k.a. Chui is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Shin Kim a.k.a. Chui is sued individually in her capacity as a manager of Defendant Corporation. Defendant Shin Kim a.k.a. Chui possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiff Guaman, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

26.     Defendants operate a spa and a nail salon located in the village of Brewster within Southeast in Putnam County in New York state.

27.     Individual Defendants, Kevin Lee a.k.a. Oi Sook Lee and Shin Kim a.k.a. Chui, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

28.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

29.     Each Defendant possessed substantial control over Plaintiff Guaman's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Guaman, and all similarly situated individuals, referred to herein.

30.     Defendants jointly employed Plaintiff Guaman (and all similarly situated employees) and are Plaintiff Guaman's (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

31.     In the alternative, Defendants constitute a single employer of Plaintiff Guaman and/or similarly situated individuals.

32.     Upon information and belief, Individual Defendant Kevin Lee a.k.a. Oi Sook Lee operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

  a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e) operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

33.     At all relevant times, Defendants were Plaintiff Guaman's employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiff Guaman, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff Guaman's services.

34.     In each year from 2016 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the salon on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiff*

36.    Plaintiff Guaman is a former employee of Defendants who was employed as a cleaner and ostensibly as a masseuse. However, Plaintiff Guaman was also required to spend a significant portion of her work day performing the non-tipped duties described above.

37.    Plaintiff Guaman seeks to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Maria Guaman*

38.    Plaintiff Guaman was employed by Defendants from approximately March 2016 until on or about March 2020, and from approximately July 2020 until on or about October 28, 2020.

39.    Defendants employed Plaintiff Guaman as a cleaner and ostensibly as a masseuse.

40.    However, Plaintiff Guaman was also required to spend a significant portion of her work day performing the non-tipped duties described above.

41.    Although Plaintiff Guaman ostensibly was employed as a masseuse, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

42.    Plaintiff Guaman regularly handled goods in interstate commerce, such as cosmetic products and other supplies produced outside the State of New York.

43.    Plaintiff Guaman's work duties required neither discretion nor independent judgment.

44.    For approximately two weeks each month from approximately March 2016 until on or about March 2020, Plaintiff Guaman worked from approximately 9:30 a.m. until on or about 7:00 p.m. to 7:30 p.m., Mondays, Thursdays, Fridays, and Saturdays and from approximately 9:30 a.m. until on or about 6:00 p.m. to 6:30 p.m., on Sundays (typically 46. 50 to 49 hours per week).

45.    For approximately two weeks each month from approximately March 2016 until on or about March 2020, Plaintiff Guaman worked from approximately 9:30 a.m. until on or about 7:00

p.m. to 7:30 p.m., 5 days a week and from approximately 9:30 a.m. until on or about 6:00 p.m. to 6:30 p.m., one day a week (typically 56 to 59 hours per week).

46.     During the month of July 2020, Plaintiff Guaman worked from approximately 9:30 a.m. until on or about 7:00 p.m. to 7:30 p.m., 5 days a week (typically 47.5 to 50 hours per week).

47.     From approximately August 2020 until on or about September 2020, Plaintiff Guaman worked from approximately 9:30 a.m. until on or about 7:00 p.m. to 7:30 p.m., 4 days a week (typically 38 to 40 hours per week).

48.     During the month of  October 2020, Plaintiff Guaman worked from approximately 9:30 a.m. until on or about 7:00 p.m. to 7:30 p.m., 3 days a week (typically 28.5 to 30 hours per week).

49.     For approximately three months Defendants paid Plaintiff Guaman by check. Thereafter, Defendants paid Plaintiff Guaman her wages by direct deposit.

50.     During March 2016, Defendants paid Plaintiff Guaman $60 per day.

51.     From approximately April 2016 until on or about December 2017, Defendants paid Plaintiff Guaman $70 per day.

52.     From approximately January 2018 until on or about March 2020, Defendants paid Plaintiff Guaman $85 per day.

53.     From approximately July 2020 until on or about October 2020, Defendants paid Plaintiff Guaman $110 per day.

54.     Plaintiff Guaman's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

55.     For example, Defendants required Plaintiff Guaman to work an additional 15 to 30 minutes past her scheduled departure time everyday, and did not pay her for the additional time she worked.

56.     Although Defendants granted Plaintiff Guaman a 10-to-15-minute break, Defendants interrupted it every day by requiring her to stop eating and clean the tables and chairs.

57.     Plaintiff Guaman was never notified by Defendants that his tips were being included as an offset for wages.

58.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Guaman's wages.

59.     Defendants withheld a portion of Plaintiff Guaman's tips; specifically, on one occasion, the owner plunged his hand into Plaintiffs Guaman's apron and took all of the tips she had received that day.

60.     Although Plaintiff Guaman was required to keep track of her time in a notebook, her hours worked were not accurately reflected. For example, in the notebook it would say 30-minute breaks, but she actually only took a 10-to-15-minute break which defendants interrupted every day; in addition, the notebook would say her shift ended at 7:00 p.m. but she actually worked until 7:20 p.m. to 7:30 p.m..

61.     On a number of occasions, Defendants required Plaintiff Guaman to sign a document, the contents of which she was not allowed to review in detail.

62.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guaman regarding overtime and wages under the FLSA and NYLL.

63.     Defendants did not provide Plaintiff Guaman an accurate statement of wages, as required by NYLL 195(3).

64.     Defendants did not give any notice to Plaintiff Guaman, in English and in Spanish (Plaintiff Guaman's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

65.     Defendants required Plaintiff Guaman to purchase "tools of the trade" with her own funds—including four shirts, four pants, black shoes, a name tag, and hand lotion.

*Defendants' General Employment Practices*

66.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Guaman (and all similarly situated employees) to work in excess of 40 hours a week without paying her appropriate minimum wage and overtime compensation as required by federal and state laws.

67.     Plaintiff Guaman was a victim of Defendants' common policy and practices which violate her rights under the FLSA and New York Labor Law by, *inter alia*, not paying her the wages she was owed for the hours she worked.

68.     Defendants' pay practices resulted in Plaintiff Guaman not receiving payment for all her hours worked, and resulted in Plaintiff Guaman's effective rate of pay falling below the required minimum wage rate.

69.     Defendants habitually required Plaintiff Guaman to work additional hours beyond her regular shifts but did not provide her with any additional compensation.

70.     Defendants required Plaintiff Guaman and all other masseuses to perform general non-tipped tasks in addition to their primary duties as masseuses.

71.     Plaintiff Guaman and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

72.    Plaintiff Guaman's duties were not incidental to her occupation as a tipped worker, but instead constituted entirely unrelated general market work with duties, including the non-tipped duties described above.

73.    Plaintiff Guaman and all other tipped workers were paid at a rate that was lower than the required lower tip-credit rate by Defendants.

74.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Guaman's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

75.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

76.    In violation of federal and state law as codified above, Defendants classified Plaintiff Guaman and other tipped workers as tipped employees, and paid them at a rate that was lower than the required lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

77.    Defendants failed to inform Plaintiff Guaman who received tips that Defendants intended to take a deduction against Plaintiff Guaman's earned wages for tip income, as required by the NYLL before any deduction may be taken.

78.    Defendants failed to inform Plaintiff Guaman who received tips, that her tips were being credited towards the payment of the minimum wage.

79.     Defendants failed to maintain a record of tips earned by Plaintiff Guaman who worked as a masseuse for the tips she received.

80.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiff Guaman who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving masseuses of a portion of the tips earned during the course of employment.

81.     Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

82.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

83.     Defendants' time keeping system did not reflect the actual hours that Plaintiff Guaman worked.

84.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

85.     On a number of occasions, Defendants required Plaintiff Guaman to sign a document the contents of which she was not allowed to review in detail.

86.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

87.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff Guaman (and similarly situated individuals) worked, and to avoid paying Plaintiff Guaman properly for her full hours worked.

88.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

89.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff Guaman and other similarly situated former workers.

90.     Defendants failed to provide Plaintiff  Guaman and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

91.     Defendants failed to provide Plaintiff Guaman and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

92.      Plaintiff Guaman brings her FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

93.      At all relevant times, Plaintiff Guaman and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

94.      The claims of Plaintiff Guaman stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

95.      Plaintiff Guaman repeats and realleges all paragraphs above as though fully set forth herein.

96.      At all times relevant to this action, Defendants were Plaintiff Guaman's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiff Guaman (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

97.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

98.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

99.     Defendants failed to pay Plaintiff Guaman (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

100.    Defendants' failure to pay Plaintiff Guaman (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

101.    Plaintiff Guaman (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

102.    Plaintiff Guaman repeats and realleges all paragraphs above as though fully set forth herein.

103.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiff Guaman (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

104.    Defendants' failure to pay Plaintiff Guaman (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

105.    Plaintiff Guaman (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

106.     Plaintiff Guaman repeats and realleges all paragraphs above as though fully set forth herein.

107.     At all times relevant to this action, Defendants were Plaintiff Guaman's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiff Guaman, controlled the terms and conditions of her employment, and determined the rates and methods of any compensation in exchange for her employment.

108.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Guaman less than the minimum wage.

109.     Defendants' failure to pay Plaintiff Guaman the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

110.     Plaintiff Guaman was damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

111.     Plaintiff Guaman repeats and realleges all paragraphs above as though fully set forth herein.

112.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Guaman overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

113.     Defendants' failure to pay Plaintiff Guaman overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

114.     Plaintiff Guaman was damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

115.      Plaintiff Guaman repeats and realleges all paragraphs above as though fully set forth herein.

116.     Defendants failed to provide Plaintiff Guaman with a written notice, in English and in Spanish (Plaintiff Guaman's primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

117.     Defendants are liable to Plaintiff Guaman in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

118.      Plaintiff Guaman repeats and realleges all paragraphs above as though fully set forth herein.

- 18 -

119.     With each payment of wages, Defendants failed to provide Plaintiff Guaman with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

120.     Defendants are liable to Plaintiff Guaman in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

121.      Plaintiff Guaman repeats and realleges all paragraphs above as though fully set forth herein.

122.     Defendants required Plaintiff Guaman to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform her job, further reducing her wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

123.     Plaintiff Guaman was damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

124.      Plaintiff Guaman repeats and realleges all paragraphs above as though set forth fully herein.

125.    At all relevant times, Defendants were Plaintiff Guaman's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

126.    Defendants made unlawful deductions from Plaintiff Guaman's wages; specifically, In one occasion, the owner plunged his hand into Plaintiffs Guaman apron and took her tips from her apron. Defendants withheld approximately $20 in tips from Plaintiff Guaman.

127.    The deductions made from Plaintiff Guaman's wages were not authorized or required by law.

128.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiff Guaman's wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

129.    Plaintiff Guaman was damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Guaman respectfully requests that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Guaman and the FLSA Class members;

(c)      Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Guaman and the FLSA Class members;

(d)      Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Guaman's and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiff Guaman and the FLSA Class members;

(f)      Awarding Plaintiff Guaman and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiff Guaman and the FLSA Class members liquidated damages in an amount equal to 100% of her damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Guaman;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Guaman;

(j)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiff Guaman's compensation, hours, wages and any deductions or credits taken against wages;

(k)      Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiff Guaman;

(l)      Awarding Plaintiff Guaman damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(m)      Awarding Plaintiff Guaman damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)      Awarding Plaintiff Guaman liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)      Awarding Plaintiff Guaman and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)       Awarding Plaintiff Guaman and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)      All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff Guaman demands a trial by jury on all issues triable by a jury.

Dated: New York, New York

January 7, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:        /s/ Michael Faillace        
Michael Faillace [MF-8436]

60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 11, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                    Maria Guaman

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      11 de diciembre de 2020

*Certified as a minority-owned business in the State of New York*